**\*NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|                          |     |                               |
|--------------------------|-----|-------------------------------|
|                          |  :  |                               |
| SHAHID GULLY,            |  :  |                               |
|                          |  :  |  Civil Action No. 12-1074 (SDW) |
|            Petitioner,   |  :  |                               |
|                          |  :  |                               |
|            v.            |  :  |  **OPINION**                  |
|                          |  :  |                               |
| JOHN J. HOFFMAN, et al., |  :  |                               |
|                          |  :  |                               |
|            Respondents.  |  :  |                               |
|                          |  :  |                               |

**WIGENTON**, District Judge:

Presently before the Court is the amended petition for a writ of habeas corpus of Shahid Gully ("Petitioner") brought pursuant to 28 U.S.C. § 2254 challenging his state court conviction (ECF No. 23), to which Respondents filed a response (ECF No. 41).   For the following reasons, this Court denies the petition and no certificate of appealability shall issue.

## I.  BACKGROUND

Petitioner, Shahid Gully, who has also used the name Dujaun Chamblain, seeks to challenge his January 6, 2000, conviction for two counts of first degree robbery, one count of third-degree receiving stolen property, and one count of second-degree eluding.   (Document 9 attached to ECF No. 26 at 5).   In its opinion affirming Petitioner's conviction following resubmission on direct appeal, the New Jersey Appellate Division provided the following summary of the factual basis for Petitioner's conviction:

> The charges against [Petitioner] emanated from events that occurred on February 3 and February 4, 1997, when [Petitioner], [co-defendant Michael] Caldwell and [co-defendant Tyree] Cooper

met in Newark, intending to travel to Jersey City to steal cars. [Petitioner] was driving a stolen Jeep Cherokee.  On the way to Jersey City, at approximately 1:30 a.m. on February 4, [Petitioner] stopped the Jeep at a toll booth on the Turnpike, where Cooper got out and attempted to rob the toll collector, who ran when Cooper pointed a gun at him.  Approximately $40 was taken by Cooper from the toll booth.  The jury acquitted [Petitioner] of robbery and the weapons counts [arising out of] this incident.

Upon arrival in Jersey City, at approximately 2 a.m., [Petitioner] pulled the Jeep over to the side of the road.  Cooper got out and waived a gun in the direction of Talib Ahmad.  Cooper warned Ahmad not to move or he would be shot.  Cooper told Caldwell to search Ahmad and asked Ahmad where his "stash" was.  Caldwell searched Ahmad's pockets, taking his gold chains and identification.  Cooper and Caldwell then returned to the Jeep and [Petitioner] drove away.  [Petitioner] was acquitted on the charges of robbery and weapons possession [resulting from] this incident.

[Petitioner] then drove the Jeep to a convenience store, where Cooper and Caldwell got out and approached three individuals, Eric Gaston, Lamont Robinson, and John Fernandez, who were standing in front of the store.  Both Gaston and Robinson testified on behalf of the State.  Gaston testified that "the guy got out of the truck, walked up and stuck something in my side." Referring to the gun he was holding, Cooper asked "Do you know what this is? Just give me all of what you got."  Gaston gave Cooper his money and beeper.  Cooper told the men, "if anybody runs he (Gaston) gets it."  While Cooper held the gun on Gaston, Caldwell rifled through the other individuals' pockets, taking a beeper and some cash from Robinson.  Robinson testified that [Petitioner] told Cooper and Caldwell to get the men's coats.  As a result, Robinson and Gaston took off their coats and threw them on the ground, where Cooper and Caldwell retrieved them before returning to the Jeep.

As a result of this incident, [Petitioner] was convicted of [the] robbery of Robinson and Gaston; the charge of robbery as to Fernandez was dismissed at the close of the State's case. [Petitioner] was acquitted of the two related weapons possession offenses arising out of this incident.

Jersey City Police Officer Michael Kenny testified that after Robinson and Gaston reported the robbery to the police, he and his partner responded to a radio dispatch and began looking for a black

Jeep Cherokee occupied by three males.   At approximately 2:25 a.m.[,] Officer Kenny spotted the Jeep and began to follow it.   The Jeep increased speed in an attempt to elude the officers.   The Jeep traveled through oncoming traffic, through a red light, and eventually accelerated to a speed of more than 110 miles per hour while traversing the Pulaski Skyway.   By this time a number of marked vehicles were following the Jeep until it was eventually abandoned in Newark.   After a search for about twenty minutes to a half-hour, all three occupants were found.   Caldwell was hiding in the bushes, and Cooper and [Petitioner] were found in a nearby housing project.   A .380 handgun with one loaded round in the chamber was also recovered and later identified by the victims as the gun used in the robberies.   Contraband from the robberies was recovered from the Jeep.

[Petitioner] testified at trial.   He disclaimed knowledge that Cooper had a gun until after he saw it.   He also said he never intended to commit any robberies and he only participated in the crimes under duress from Cooper and Caldwell.   Caldwell testified that although [Petitioner] was never told that he (Caldwell) and Cooper were "really going to find places to stick up the drug dealers," [Petitioner] "knew what he was doing."

(Document 9 attached to ECF No. 26 at 6-8).

Prior to trial, the trial court held a *Wade* hearing regarding the voice identification of Petitioner by one of the robbery victims, Lamont Robinson.   (*See* Document 48 attached to ECF No. 26).   During the hearing, Detective Ricciardi of the Jersey City Police Department testified that he conducted an identification of the three defendants in Petitioner's trial by Robinson.   (*Id.* at 12-14).   Ricciardi testified that Robinson was taken to the holding cells at the jail and identified Petitioner's two co-defendants by sight.   (*Id.* at 14).   Ricciardi testified that Petitioner then spoke to Robinson, stating that Robinson "couldn't ID him and . . . didn't know him," at which point Ricciardi told Robinson not to discuss the matter with Petitioner, and Robinson told Ricciardi that he recognized Petitioner's voice from the robbery.   (*Id.* at 14-15).   Ricciardi testified that Robinson immediately and emphatically identified Petitioner as the third perpetrator upon being

3

spoken to by Petitioner.   (*Id.* at 16-17).   Based on Ricciardi's testimony, the trial court concluded

that the identification of Petitioner was not unduly suggestive under the circumstances:

> The issue here is, quite frankly, were the police procedures so impermissibly suggestive as to render any opinion of identification possible.   Well, they were not.   The police officers did not set up a scenario by way of information that [Petitioner] would have to say something that is similar in words to what was said to the victim at the scene.   In fact, we're not even sure if the police officer at that point in time knew there was any interaction communicated orally by [Petitioner] or the third person in the car to the victim.   And, in fact, this officer immediately told both people to stop speaking to each other when he was surprised that this had occurred.
>
> Now, what is the argument of the defendant that would cause suggestibility was the fact of bringing the alleged victim to the place where there are three people, knowing that they had arrested people and that he's there to do an identification, and therefore, in and of itself, that is per se suggestive, but I dare say that argument is stronger if there [had] been a visual identification of the third man, [Petitioner], by Mr. Robinson.
>
> Quite the contrary.   He didn't identify him.   And he said he couldn't identify him, or words to that effect, and it was only when these words were blurted out and this exchange occurred that there was an identification made.   That clearly is a question of credibility for the jury to decide.   It's perfectly acceptable to, in the course of doing an investigation, to bring an individual to a place to have them identify if the right people have been arrested.   That was done here. Although the State runs a risk that you always have a greater suggestibility issue if there [are] fewer people that are being identified officially if they're identified in a police station, given the total ambience that attaches there.
>
> In this particular case, [Petitioner] was never identified to this day, to my knowledge, as the person who committed [the robbery] by his visual identification, but rather [he] was [identified] by the words [he spoke], and it was not done under the direction of any police.   I find that without any question.   It was rather done as a result of the blurting out of the words [by Petitioner], and then the immediate identification by the alleged victim.

> So, consequently, all of the issues that have been raised by
> [the] defense do not raise to the level of causing the Court to find
> that this [was] impermissibly suggestive.  Of course, there's no
> burden upon the defense to do that, but I'm just addressing the
> arguments that have been raised.  The burden falls upon the State,
> as it does at all times and in these types of hearings.  There's no
> question credibility rests with the witness.  He was more than an
> intermediary there between the statements that were voluntarily
> made by [Petitioner].  There's none of the *Miranda* [issues],
> although there's custody, there's none of the *Miranda* frailties [at
> issue here, and] there's no question that this identification can stand
> and can be made part of the State's case.

(*Id.* at 44-47).   Robinson was therefore permitted to testify as to his voice identification of

Petitioner at trial.   (*Id.*).

Petitioner was convicted following a jury trial in November 1999, and was sentenced on

January 6, 2000.   (Document 9 attached to ECF No. 26 at 4-5).   In sentencing Petitioner, the trial

judge determined that the No Early Release Act, N.J. Stat. Ann. § 2C:43-7.2, ("NERA") applied

to Petitioner's convictions for first-degree robbery, requiring that Petitioner receive an 85% parole

disqualifier for his sentences as to those counts.   (*Id.* at 5).   The trial judge also determined that

Petitioner was subject to periods of parole ineligibility under New Jersey's Graves Act, N.J. Stat.

Ann. § 2C:43-6(c), which requires periods of parole ineligibility where certain offenses, including

robbery, are committed by persons using or possessing firearms.   (*Id.*).   Based on the trial judge's

findings as to the relevant mitigating and aggravating factors, Petitioner thus received the

following sentence:

> a twenty-year prison term on count two [(first degree robbery)], with
> a ten-year parole ineligibility pursuant to the Graves Act, and a five-
> year parole supervision [term] with eighty-five percent [parole]
> ineligibility under NERA; on count three [(first degree robbery)], a
> twenty-year prison term was imposed, with a ten-year parole
> ineligibility under the Graves Act, and a five-year parole supervision
> [term], with eighty-five percent parole ineligibility under NERA;

the term imposed under count three was to run concurrent with the
term imposed under count two.   On count thirteen [(receiving
stolen property)], a five-year prison term was imposed to run
concurrent with counts two and three; on count fifteen [(eluding)] a
ten-year prison term was imposed, to run consecutive to counts two
and three.   Restitution, fines[,] and penalties were also imposed.

(*Id.* at 5-6).

Following his sentence, Petitioner appealed and the New Jersey Appellate Division

affirmed both his conviction and sentence on January 17, 2002.   (Document 8 attached to ECF

No. 26).   The matter was resubmitted to the Appellate Division for consideration of Petitioner's

pro se arguments as well as those raised by appellate counsel, and the Appellate Division again

affirmed Petitioner's conviction and sentence on February 25, 2002.[1]   (Document 9 attached to

ECF No. 26).

In that opinion, the Appellate Division addressed Petitioner's claim that the factual

predicate for Petitioner's NERA sentence was not found beyond a reasonable doubt by the jury.

(*Id.* at 8-9).   The Appellate Division first noted that the NERA predicate is required to be found

beyond a reasonable doubt by the jury in a criminal trial.   (*Id.*).   Specifically, NERA requires

that, in the course of committing an underlying offense, the criminal defendant "actually [] use[d]

or threaten[ed] the immediate use of a deadly weapon or physical force unless serious bodily injury

has been inflicted."   (*Id.* at 9).   The Appellate Division next held that, pursuant to a decision of

the New Jersey Supreme Court, an accomplice is treated the same as a principal for NERA

---

[1] The Appellate Division's second opinion following resubmission is largely identical to the
original January 17, 2002, opinion, save for the fact that it includes an additional section
addressing Petitioner's pro se argument challenging his identification by one of his victims.
(*See* Document 9 attached to ECF No. 26 at 19-20).   As such, the opinion rendered following
resubmission on February 25, 2002, is effectively a stand-alone opinion which addressed all
claims raised by Petitioner on direct appeal.

purposes, and Petitioner was therefore susceptible to a NERA sentence as an accomplice because his co-defendants had used a gun in committing the robberies for which Petitioner was convicted. (*Id.* at 9-10).   The Appellate Division noted that, in order to be convicted of robbery, Petitioner had to have been found by the jury to possess the requisite mental state (an intent to use force or the threat of force to commit a theft), and to have had actual knowledge of the gun involved prior to the incidents for which he was convicted.   (*Id.* at 10-11).   Ultimately the Appellate Division concluded that even where NERA is not specifically charged, so long as a defendant is found by a jury beyond a reasonable doubt to have committed the requisite violent offense, or to have been an accomplice to such a violent offense, he is subject to NERA and its parole disqualifiers.   (*Id.* at 11-13).

The Appellate Division likewise addressed Petitioner's claim that the inclusion of ten year periods of parole ineligibility pursuant to the Graves Act violated the principles of *Apprendi v. New Jersey*, 530 U.S. 466 (2000).   (Document 9 attached to ECF No. 26 at 13).   The Appellate Division noted that Petitioner had conceded that, if he was subject to NERA, the Graves Act terms were irrelevant (as the eighty five percent disqualifier was a longer period of ineligibility than that inflicted under the Graves Act).   (*Id.*).   The Appellate Division therefore concluded that, because the NERA sentence was lawful, it did not need to address the Graves Act claim.   (*Id.*).

Finally, the Appellate Division addressed Petitioner's claim that the trial court erred in denying him relief following his *Wade* hearing:

> We now consider the identification issues raised by [Petitioner] in his *pro se* supplemental letter brief.   The question of [Petitioner]'s identification was addressed by the trial judge at a hearing pursuant to [*United States*] *v. Wade*, 388 U.S. 218 [(1967)], commonly known as a *Wade* hearing, on October 26, 1999.   The substance of the testimony at the hearing was that Detective Roy

7

> Ricciardi brought Robinson to the Jersey City East District Police
> Station in the early morning hours after the robbery was committed.
> He took Robinson to the holding cell where Caldwell, Cooper[,] and
> [Petitioner] were being housed.   Robinson was able to identify
> Caldwell and Cooper, but before he had an opportunity to identify
> defendant, [Petitioner] allegedly stated that Robinson would be
> unable to identify him.   When [Petitioner] spoke up, Robinson then
> said he recognized [Petitioner] by his voice.   Robinson admitted
> that he was unable to identify [Petitioner] by his facial features
> because [Petitioner] remained in the car during the robbery, but he
> specifically remembered [Petitioner] telling the other two actors to
> "take their jackets."   In rendering his decision to admit the
> identification, the trial judge comprehensively reviewed both federal
> and state law as it applies to the admissibility of identification and
> concluded that the voice identification was admissible.   His
> decision to allow the identification was supported by the record and
> not an abuse of discretion.

(Document 9 attached to ECF No. 26 at 19-20).   The Appellate Division therefore affirmed Petitioner's conviction and sentence.   (*Id.* at 20).   Petitioner thereafter filed a petition for certification, which was denied on March 20, 2002.   (Document 12 attached to ECF No. 26).

On May 21, 2002, Petitioner filed a pro se application for post-conviction relief in the New Jersey Superior Court, Law Division.   (Document 13 attached to ECF No. 26).   PCR counsel thereafter filed an additional brief in support of that petition.   (Document 14 attached to ECF No. 26).   Following oral argument on the application on June 21, 2004, the Law Division judge denied Petitioner's PCR application on June 28, 2004.   (Document 16 attached to ECF No. 26). Petitioner appealed, and the Appellate Division affirmed on February 23, 2006.   (Document 23 attached to ECF No. 26).   The New Jersey Supreme Court denied Petitioner's petition for certification on September 8, 2006.   (Document 27 attached to ECF No. 27).

Following the denial of certification as to his PCR application, Petitioner filed a motion to correct his sentence in the Law Division on or about July 3, 2007.   (Document 28 attached to ECF

8

No. 26).   In that motion, Petitioner argued both that he was improperly sentenced under NERA and the Graves Act, as well as that he was improperly sentenced based on aggravating factors not found by a jury pursuant to *State v. Natale*, 184 N.J. 458, 878 A.2d 724 (2005).   (*Id.*, Document 29 attached to ECF No. 26).   Oral argument was conducted on January 17, 2008, and the Law Division judge denied Petitioner's NERA and Graves Act claims, but ordered that a subsequent hearing be held on the *Natale* issue.   (Document 32 attached to ECF No. 26).   As to the NERA and Graves Act issues, the Law Division specifically denied those claims as they had already been raised before the Appellate Division and rejected during Plaintiff's direct appeal.   (*Id.* at 3-4). The Law Division judge held a hearing on the *Natale* issue on March 11, 2008, and ultimately resentenced Petitioner on April 3, 2008, with Petitioner receiving the same sentence as previously issued, which was memorialized in a *nunc pro tunc* judgment of conviction entered on September 30, 2009.[2]   (Document 37 attached to ECF No. 26).

Petitioner appealed his resentencing, again arguing that he had been improperly sentenced under NERA and the Graves Act.   (Document 39 attached to ECF No. 26).   On February 2, 2011, the Appellate Division affirmed Petitioner's resentencing and the denial of his motion to correct his sentence by way of a written opinion.   (Document 43 attached to ECF No. 26).   In rejecting Petitioner's NERA and Graves Act arguments, the Appellate Division relied on its prior opinion issued on direct appeal, and noted that the case law regarding parole disqualifiers had not changed in the interim, and that Petitioner's arguments were therefore without merit.   (*Id.* at 6-9).

---

[2]  Because of some confusion between the Law and Appellate Division regarding whether written orders and opinions were rendered and whether a full resentencing had been conducted, the matter moved back and forth between the Law and Appellate Divisions via motion practice between April 2008 and September 2009.   (*See* Documents 32-37 attached to ECF No. 26).

9

Petitioner's petition for certification was subsequently denied by the New Jersey Supreme Court on June 16, 2011.   (Document 46 attached to ECF No. 26).

Prior to the filing of his motion to correct his sentence in the state courts, Petitioner filed an initial habeas petition in this Court on or about October 13, 2006.   (No. 06-5397 at ECF No. 1).   Judge Hayden ultimately ordered that petition stayed and held in abeyance during the pendency of Petitioner's motion challenging his sentence by way of an order and opinion issued on October 19, 2007.   (No. 06-5397 at ECF No. 12, 13).   That order was thereafter upheld by the Third Circuit on March 26, 2008.   (No. 06-5397 at ECF No. 19).   Following the denial of his certification petition on June 16, 2011, Petitioner requested that his habeas petition be reopened. (No. 06-5397 at ECF No. 20, 21).   Judge Hayden granted that request on February 21, 2012, ultimately resulting in Petitioner's current amended petition for a writ of habeas corpus.   (No. 06-5397 at ECF no. 22, ECF Nos. 1-23).

## II.   DISCUSSION

### A.   Legal Standard

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."   A habeas petitioner has the burden of establishing his entitlement to relief for each claim presented in his petition based upon the record that was before the state court.   *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013); *see also Parker v. Matthews*, --- U.S. ---, ---,132 S. Ct. 2148, 2151 (2012).   Under the statute, as amended by the Anti-Terrorism and Effective Death

Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), district courts are required to give great deference to the determinations of the state trial and appellate courts.  *See Renico v. Lett*, 559 U.S. 766, 772-73 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).  Federal law is clearly established for these purposes where it is clearly expressed in "only the holdings, as opposed to the dicta" of the opinions of the United States Supreme Court.  *See Woods v. Donald*, --- U.S. ---, ---, 125 S. Ct. 1372, 1376 (2015). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong."  *Id.*  Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and the] applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

**B.   Analysis**

**1.   Petitioner's Arguments regarding his sentence**

Petitioner raises four arguments in his amended petition.   Three of those arguments essentially assert a single claim: that he was sentenced based on judicial fact finding in violation of *Blakely v. Washington*, 542 U.S. 296 (2004), and *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), when the trial court applied NERA and the Graves Act to his sentence without an independent finding that each applied by the jury in his criminal trial.   Petitioner also asserts that this judicial fact finding resulted in a sentence above the statutory maximum in violation of *Apprendi*.   "Sentencing is generally considered a matter of state criminal procedure, which does not fall within the purview of federal habeas review."   *Vreeland v. Warren*, No. 11-5239, 2013 WL 1867043, at *17 (D.N.J. May 2, 2013).   Federal courts thus are normally limited in reviewing a state court sentence to those instances wherein a prisoner's sentence exceeds the relevant statutory limits.   *Id.*

Petitioner argues that the "judicial fact finding" of the factual predicates for his NERA and Graves Act sentence are violative of *Blakely* and *Apprendi* and resulted in a sentence beyond the normal statutory maximum.   In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."   530 U.S. at 490. In *Blakely*, the Court applied *Apprendi* and held that the imposition of a sentence three years beyond the normal statutory maximum based on a fact found by a judge and not submitted to a jury violated a criminal defendant's Sixth Amendment right to a jury pursuant to *Apprendi*.   542 U.S. at 313-14.   Both cases dealt explicitly with circumstances where a defendant was sentenced

to a term beyond the normal statutory maximum for the offense in question.

Initially, this Court notes that Petitioner did not receive a custodial sentence greater than that provided by the statute in question. Petitioner was convicted of two counts of first degree robbery. Under New Jersey law, a criminal convicted of a first degree offense may be sentenced "for a specific term of years . . . between 10 years and 20 years." N.J. Stat. Ann. § 2C:43-6(a)(1). Petitioner was sentenced to a twenty year term for each conviction, and therefore did not receive a term above the normal statutory maximum for the offenses for which he was convicted.

To the extent that Petitioner's claim is based upon the assertion that the maximum sentence that could be imposed without judicial fact-finding under the pre-*Natale* New Jersey sentencing scheme applicable at his initial sentencing was a fifteen year presumptive term, *see* 184 N.J. 483-84, that argument is precluded by the fact that Petitioner was ultimately resentenced in the state court under the post-*Natale* sentencing scheme specifically because of that issue. (Document 37 attached to ECF No. 26). Thus, at the time of the resentencing, the New Jersey Supreme Court had already done away with the presumptive terms, and the statutory maximum to which Petitioner could be sentenced without any additional fact-finding beyond the jury's guilty verdict for a first degree offense was twenty years. *Id.* at 487-88; *see also* N.J. Stat. Ann. § 2C:43-6(a)(1). Thus at the time of the sentence Petitioner is actually challenging, his 2009 resentencing, there were no presumptive terms to exceed so long as Petitioner was sentenced within the applicable range, and Petitioner's sentence fell within that range in so much as he received the maximum sentence applicable under the statute by virtue of the jury's verdict alone. *See* N.J. Stat. Ann. § 2C:43-6(a)(1). Petitioner's claim that he was sentenced beyond the presumptive term must therefore fail. To the extent that Petitioner's argument instead relies on his sentencing under both the

Graves Act and NERA, this Court notes that, when applicable, those statutes provide for periods of parole ineligibility applicable to a criminal defendant's sentence rather than an increase in the actual length of his sentence.  As Petitioner's sentence fell within the range applicable to his crimes pursuant to the New Jersey statues by virtue of his conviction for first degree robbery, his sentence, including the periods of parole ineligibility, did not violate *Apprendi* or *Blakely* as it did not exceed the normal statutory maximum.[3]  *Blakely*, 542 U.S. at 313-14.

In any event, Petitioner's NERA and Graves Act claims must fail because the state courts concluded that the factual predicates for Petitioner's periods of parole ineligibility were submitted to, and found by, the jury in Petitioner's case, albeit as part and parcel of the robbery charges of which Petitioner was convicted rather than as stand-alone determinations.  "[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."  *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).  This Court must therefore defer to the state courts for the purposes of determining when a guilty verdict itself establishes the applicability of special sentencing schemes such as NERA and the Graves Act.  As the Appellate Division explained at length on direct appeal, Petitioner was subject to the sentencing restrictions of NERA under New Jersey law by virtue of his conviction for robbery under the circumstances of this case without any additional judicial fact finding or a requirement that NERA be submitted to a jury, and therefore there was no error by the trial judge when he

---

[3] Because neither the NERA nor the Graves Act increased the mandatory minimum to which Petitioner was subject under New Jersey Law (10 years), instead affecting only Petitioner's parole eligibility, Petitioner's sentence would likewise not violate the rule announced in *Alleyne v. United States*, --- U.S. ---, ---, 131 S. Ct. 2151, 2160 (2013), even were *Alleyne's* holding retroactively applicable to cases on collateral review.  *See United States v. Reyes*, 755 F.3d 210, 212 (3d Cir. 2014) (holding that *Alleyne* does not apply retroactively to cases on collateral review).

sentenced Petitioner to parole disqualifiers under NERA on that basis.

As the Appellate Division explained, NERA, at the time of Petitioner's initial sentence, required that a jury find beyond a reasonable doubt that a criminal defendant "actually [] use[d] or threaten[ed] the immediate use of a deadly weapon or physical force unless serious bodily injury has been inflicted."   (Document 9 attached to ECF No. 26 at 8-9).   For NERA purposes, however, both principal actors and their accomplices are treated the same, and thus where a defendant was an accomplice to an individual who qualifies for a NERA sentence, that defendant himself is subject to NERA.   *See State v. Rumblin*, 166 N.J. 550, 555-56, 766 A.2d 1141, 1144-45 (2001). Likewise, although the jury must find the factual predicate for NERA beyond a reasonable doubt, it need not make a stand-alone finding: where the conviction for the charged offense itself establishes the requisite predicate facts, NERA applies even if the jury does not make an explicit and separate factual finding as to NERA.   *See State v. Johnson*, 166 N.J. 523, 546, 766 A.2d 1126, 1139 (2001).

The charges on which the jury found Petitioner guilty, even to the extent he was convicted solely as an accomplice to his co-defendants, clearly establish the necessary factual predicate.   In order to convict Petitioner of first degree armed robbery, the jury was required to find beyond a reasonable doubt that, in the course of a theft, Petitioner and his co-defendants "attempt[ed] to kill anyone or purposefully inflict[ed] or attempt[ed] to inflict serious bodily injury, or [was] armed with, or use[d] or threaten[ed] the immediate use of a deadly weapon."   N.J. Stat. Ann. § 2C:15-1(b).   The facts produced at trial clearly established that Cooper threatened Robinson and Gaston with his handgun, a handgun that Petitioner had seen him use to rob others that same night. Petitioner was certainly aware of the weapon by the time Robinson and Gaston were robbed, and

the jury's determination that Petitioner was guilty of first degree armed robbery required that the jury conclude both that Petitioner shared the requisite mental state sufficient to be an accomplice to Cooper's theft by way of the threat of the use of a deadly weapon and that Cooper did indeed steal from Robinson and Gaston by way of the threat of the use of that deadly weapon.   That the jury found Petitioner guilty of first degree armed robbery by its very nature established the necessary factual predicate for NERA sentencing, and, as held by the Appellate Division, Petitioner was subject to a NERA sentence even in the absence of separate determination that the armed robbery in question qualified as a violent crime.   (Document 9 attached to ECF No. 26 at 11-13).   Under New Jersey law as determined by the New Jersey Supreme Court in *Johnson* and *Rumblin*, and as discussed by the Appellate Division in Petitioner's direct appeals, clearly establishes that Petitioner was subject to the NERA sentence as a result of the facts found beyond a reasonable doubt by the jury in his criminal trial.   As such, it was not an error of law or fact for Petitioner to be subjected to the 85% parole disqualifier provided for by NERA under the circumstances.

To the extent that Petitioner challenges the applicability of the Graves Act to his sentence, that challenge is subsumed by his NERA challenge.   Pursuant to NERA, Petitioner is subject to an 85% parole disqualifier, which effectively requires that he serve seventeen years of his twenty year sentence before he is eligible for parole.   Pursuant to the Graves Act, Petitioner also received a ten year period of parole ineligibility for each of his robbery convictions.   Thus, because Petitioner is subject to the NERA ineligibility, his sentence would not change were the Graves Act term invalidated, and any error that may have occurred in imposing Graves Act terms on Petitioner would ultimately be harmless.   Indeed, Petitioner himself acknowledged on direct appeal that "if

16

the trial court's decision to apply NERA is affirmed, the Graves Act issue becomes irrelevant." (Document 9 attached to ECF 26 at 13).   Petitioner has thus already conceded that, if his NERA sentence was proper, the Graves Act issue presents, at most, harmless error.[4]   Because the NERA sentence was entirely appropriate under state law and did not violate *Apprendi* or *Blakely* in so much as the jury made the requisite fact finding and the NERA sentence did not push Petitioner's sentence beyond the statutory maximum, that Petitioner also received lesser terms of parole ineligibility under the Graves Act is immaterial.   Because Petitioner's sentence does not violate *Apprendi* or *Blakely*, because the NERA parole disqualifier was properly applied, and because Petitioner has conceded that his Graves Act claim is therefore irrelevant, Petitioner's sentencing arguments fail to establish any basis for habeas relief.

## 2. Petitioner's *Wade* Hearing Claim

Petitioner's final argument is that the trial court erred in admitting Robinson's identification into evidence following the *Wade* hearing.   The Supreme Court set forth the appropriate test for determining the admissibility of an out of court identification in *Manson v. Brathwaite*, 432 U.S. 98, 116 (1977).   Pursuant to *Manson*, an identification procedure violates due process where the procedure used is "unnecessarily suggestive and . . . creates a substantial

---

[4] On appeal from his resentencing, Petitioner argued that his assigned attorney, rather than he himself, made this concession, and attempted to denounce the concession.   (Document 43 attached to ECF No. 26 at 9 n. 4).   The Appellate Division rejected that argument as without factual support in the record.   (*Id.*).   In any event, in his Petition before this Court, Petitioner specifically states that the Graves Act issue "becomes relevant" only if "the Federal Court [should] order the NERA aspect of his sentence be vacated."   (ECF no. 23 at 7).   Petitioner has therefore conceded before this Court that, so long as his NERA sentence was properly given, his Graves Act claims are of no moment and ultimately have no bearing on the legality of his sentence.

risk of misidentification." *United States v. Brownlee*, 454 F.3d 131, 137 (3d Cir. 2006); *see also United States v. Anthony*, 458 F. App'x 215, 218 (3d Cir. 2012).   The inquiry does not end with a finding that the procedures were unnecessarily suggestive, as "reliability is the linchpin in determining the admissibility of identification testimony . . . The factors to be considered . . . include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation.   Against these factors is to be weighed the corrupting effect of the suggestive identification itself." *Anthony*, 458 F. App'x at 218 (quoting *Manson*, 432 U.S. at 114).

Here, the state courts evaluated Robinson's identification of Petitioner in accordance with the *Manson* standard and determined that the identification procedure was not unduly suggestive, and that, in any event, the identification of Petitioner was more than reliable enough to warrant submission to a jury.   That conclusion not only comports with *Manson* but also is entirely supported by the facts.   The identification Petitioner challenges is the statement by Robinson that Petitioner was the driver involved in the robbery based upon Petitioner's unelicited statement to Robinson that Robinson would not be able to identify him.   The police officer involved did not ask Petitioner to speak, and he instructed both Robinson and Petitioner not to speak to one another once they began speaking.   Indeed, as the trial court noted, it was not even clear whether the officer knew that Petitioner had made a statement during the robbery sufficient to allow an identification at the time of the jail house confrontation.   Under the circumstances, where Robinson admitted he could not have identified Petitioner by sight, but only managed to do so after hearing Petitioner's voluntary and unprovoked statement to Robinson, the procedures that led

to Robinson's identification do not appear to have been unduly suggestive.

In any event, the identification by Robinson was more than sufficiently reliable to warrant its admission into evidence even if one concluded that the identification procedure was somehow suggestive, even in light of the fact that it was Petitioner's own choice to speak that led to the identification.   In this case, Robinson identified Petitioner a few hours after the robbery, Petitioner had had a good opportunity to hear Petitioner speak when he ordered his co-defendant to take Robinson's coat, and Robinson was absolutely certain of Petitioner's identity as the driver involved in the robbery as soon as Petitioner began to speak.   Thus there was a relatively brief period between the robbery and the identification, Robinson had a good opportunity to hear Petitioner speak, and Robinson was clearly certain that Petitioner was the driver, all of which suggest that Robinson's identification of Petitioner was reliable.   Given Robinson's candid admission that he did not recognize Petitioner's face and could not have identified him by seeing him, Robinson's identification of Petitioner's voice gains further credence in so much as it comports with the facts Robinson gave in describing the robbery: that he only heard the driver speak and the driver did not exit the car where Robinson could clearly view him.   In light of these facts, the identification given by Robinson was more than reliable enough to warrant submission to the jury, and the state courts' conclusion that the identification was admissible both comports with relevant federal law, *see Anthony*, 458 F. App'x at 218 (quoting *Manson*, 432 U.S. at 114), and is based upon an entirely reasonable and proper interpretation of the relevant facts.   As such, Petitioner's claim that the trial court erred in admitting the identification following the *Wade* hearing fails to provide any basis for habeas relief, and Petitioner's habeas petition must therefore be denied.

### III.   CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. §2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of a state court proceeding unless he has "made a substantial showing of the denial of a constitutional right."   "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further."   *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). For the reasons expressed above, Petitioner has failed to make a substantial showing that he was denied a constitutional right as jurists of reason could not disagree with this Court's resolution of his claims and he has not shown that the issues presented here are adequate to deserve encouragement to proceed further.   This Court shall therefore deny Petitioner a certificate of appealability.

### IV. CONCLUSION

For the reasons stated above, Petitioner's petition for a writ of habeas corpus is DENIED, and Petitioner is DENIED a certificate of appealability.   An appropriate order follows.


s/ Susan D. Wigenton, U.S.D.J.


Orig:          Clerk
cc:            Parties

20